IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:20-CV-266-RJ

JERMAINE HOWARD,

        Plaintiff/Claimant,

v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

        Defendant.

O R D E R

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-35, -41] pursuant to Fed. R. Civ. P. 12(c). Claimant Jermaine Howard ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of his application for Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is allowed, Defendant's Motion for Judgment on the Pleadings is denied, and the case is remanded for further proceedings consistent with this order.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for SSI on December 12, 2013, alleging disability beginning December 1, 2011. (R. 27, 1364–70). His claim was denied initially and upon reconsideration. (R. 15, 1199–1223). A hearing before the Administrative Law Judge ("ALJ") was held on June 4, 2018 and March 4, 2019, at which Claimant, who was unrepresented, and a vocational expert ("VE") appeared and testified. (R. 1165–98). On April 26, 2019, the ALJ issued

a decision denying Claimant's request for benefits. (R. 24–42). On April 14, 2020, the Appeals Council denied Claimant's request for review. (R. 1–7). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 416.920a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 416.920a(e)(3).

In this case, Claimant alleges the ALJ erred by (1) failing to make findings regarding Claimant's time off task and absences, (2) failing to adequately account for the vocationally limiting effects of Claimant's lower extremity edema in the RFC, and (3) misevaluating the opinion of Dr. Gabriel Kyerematen, the consultative examiner, and (4) the Appeals Council erred by failing to evaluate and consider the medical evidence and opinions submitted to it in the first instance.

3

Pl.'s Mem. [DE-36] at 6–19.

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful activity since December 12, 2013, the application date. (R. 29). Next, the ALJ determined Claimant had the severe impairments of cardiomyopathy, sickle cell disease, and asthma, and the nonsevere impairment of substance addiction disorder. *Id.* Applying the special technique prescribed by the regulations, the ALJ found that Claimant's mental impairments had resulted in no limitations in understanding, remembering, or applying information; interacting with others; or adapting or managing oneself, and a mild limitation in concentrating, persisting, or maintaining pace. (R. 30). At step three, the ALJ concluded Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 30–31).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform sedentary work[1] with the following limitations:

> he can frequently operate foot controls with the bilateral lower extremities. He can never reach overhead with the right upper extremity. He can frequently reach in all other directions with the right upper extremity. He can frequently handle, finger, and feel with the right upper extremity. He can occasionally climb ramps and stairs, balance, stoop, and crouch. He can never climb ladders, ropes, and scaffolds and crawl. He can never work at unprotected heights. He can occasionally work with moving mechanical parts and operate a motor vehicle. He can work occasionally in

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 416.967(a); S.S.R. 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. "Sitting" generally totals about 6 hours of an 8-hour workday. S.S.R. 96-9p, 1996 WL 374185, at *3. A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1. *Id.*

4

> weather, humidity and wetness, dust, odors, fumes and pulmonary irritants, heat, and vibration. He can never work in extreme cold.

(R. 31–34). In making this assessment, the ALJ found Claimant's statements about his limitations to be not entirely consistent with the medical evidence and other evidence in the record.[2] (R. 32). At step four, the ALJ concluded Claimant had no past relevant work. (R. 34). Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 35).

## V. DISCUSSION

Claimant suffers from cardiomyopathy, sickle cell anemia, and asthma[3] and asserts that due to shortness of breath, pain, weakness, and fatigue caused by these conditions he would require additional breaks, time off task, and significant absenteeism that would preclude his ability to work even at the restrictive RFC determined by the ALJ. Claimant contends the ALJ erred in formulating the RFC by failing to account for all his limitations and misevaluating the opinion of a consultative examiner. Pl.'s Mem. [DE-36] at 6–16. Claimant also contends the Appeals Council erred in failing to evaluate and consider medical evidence and opinions submitted to it in the first instance. *Id.* at 17–19.

### A. The RFC Assessment

Claimant contends the ALJ erred in formulating the RFC by failing to account for all his limitations and misevaluating the opinion of a consultative examiner. Pl.'s Mem. [DE-36] at 6–

---

[2] The court notes that it appears the ALJ only considered Claimant's testimony from the second administrative hearing and failed to consider Claimant's testimony from the first administrative hearing. (R. 32, 1165–98).
[3] Records submitted to the Appeals Council, dating from both before and after the ALJ's decision, as well as some evidence before the ALJ, indicate Claimant suffers from a seizure disorder, which the ALJ should also consider on remand. (R. 62–142, 188–714, 718–36, 745–67, 1172, 1180, 1189–90, 1197, 1727–30, 1755–56, 1780–81, 1805–06, 1811–12, 2266–69, 2428–29, 2515, 2517).

5

16. Defendant contends the ALJ properly considered Claimant's allegations of being off task and of lower extremity edema, and properly considered the opinion of Dr. Kyerematen. Def.'s Mem. [DE-42] at 6–15.

The RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The ALJ must provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* (quoting S.S.R. 96-8p). "Only after such a function-by-function analysis may an ALJ express RFC 'in terms of the exertional levels of work.'" *Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636); *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion").

### 1. Dr. Kyerematen's Opinion

When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R. § 416.945(a)(3). Regardless of the source, the ALJ must evaluate every medical opinion received. *Id.* § 416.927(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* § 416.927(c)(1). Additionally,

6

more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources such as consultative examiners. *Id.* § 416.927(c)(2). When the opinion of a treating source regarding the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence," it is given controlling weight. *Id.* However, "[i]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). An ALJ may not reject medical evidence for the wrong reason or no reason. *See Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006). "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (citations omitted). However, "[a]n ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' or has failed to give a sufficient reason for the weight afforded a particular opinion." *Dunn v. Colvin*, 607 F. App'x 264, 267 (4th Cir. 2015) (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir.

1992)).

The ALJ referred Claimant for a consultative examination after the first administrative hearing, (R. 1181–82), and Claimant saw Dr. Kyerematen on July 21, 2018, (R. 2514–23). Dr. Kyerematen issued a medical consultant narrative report and completed a medical source statement of ability to do work-related activated, which is an SSA approved form. *Id.* Dr. Kyerematen noted Claimant's history of heart problems and sickle cell disease. Claimant reported shortness of breath, chest pain, dyspnea on exertion, and profuse diaphoresis since 2012, records indicated Claimant had a cardiac catherization and received an Automatic Implantable Cardioverter Defibrillator ("AICD") on April 18, 2018, and Claimant's persistent residual dyspnea on exertion had not improved significantly since the catherization and AICD placement. (R. 2514). Claimant reported a history of recurrent sickle cell crisis, with his last acute crisis in December 2017 requiring a forty-five day hospital admission. (R. 2515). Claimant reported he could attend independently to his ADLs and perform light chores but could not mop, vacuum, sweep, or do yard work. *Id.* Claimant's examination was largely normal; however, his left shoulder range of motion was limited. (R. 2516). Dr. Kyerematen concluded, based on Claimant's reviewed medical history and physical examination findings, that Claimant had moderate limitations to sitting, standing, and walking; mild to moderate limitations to lifting or carrying with overhead reach difficulty; no manipulative limitations to reaching, handling, feeling, or grasping; moderate postural limitations to bending, stooping, crouching, or squatting; no visual or communicative limitations; and an ambulatory assistive device is not indicated. (R. 2517). On the medical source statement, Dr. Kyerematen further specified, in relevant part, that Claimant could, at one time without interruption, sit for thirty minutes, stand for 15 minutes, and walk for three minutes; could sit for three hours, stand for two hours, and walk for one hour total in an eight hour workday; and could

8

not walk a block at a reasonable pace on rough or uneven surfaces. (R. 2519, 2523).

The ALJ weighed Dr. Kyerematen's opinion, along with another consultative examiner's opinion from May 6, 2014, assigning it little weight and explaining as follows:

> The examiners did not offer these opinions in completely relevant vocational terminology defined by our regulations, which lessens the probative value of this evidence. For example . . . the second examiner [Dr. Kyerematen] opined that the claimant had mild to moderate limitations in various work related activities, but again, did not define these terms mild or moderate (Exhibit 21F at 5). Accordingly, these opinions are of little probative value in assessing the claimant's residual functional capacity. On examination, the claimant had 5/5 strength (Exhibit 2F at 8; Exhibit 9F at 5). He had good manual dexterity (Exhibit 9F at 5). His gait was normal (Exhibit 9F at 6). Based on this evidence, the undersigned finds that the claimant retains the capacity to perform work at the sedentary exertional level. The claimant was noted to have an abnormal stress test and rest myocardial perfusion images (Exhibit 13F at 2). The evidence indicates a large, fixed inferior and inferoapical defect of moderate to severe intensity, likely diaphragmatic attenuation artifact, but inferior infarction could not be excluded (Exhibit 13F at 2). There was no detection of ischemia (Exhibit 13F at 2). His left ventricle was dilated with global LV hypokinesis (Exhibit 13F at 2). He had an ejection fraction of 30 percent (Exhibit 13F at 2). He had a normal ECG response to regadenoson (Exhibit 13F at 2). Catheterization revealed mildly elevated filling pressures, mild pulmonary hypertension, and elevated CO/CI (Exhibit 13F at 3). These findings were consistent with overall well compensated non-ischemic cardiomyopathy (Exhibit 13F at 3).

(R. 33–34).

The ALJ erroneously stated that Dr. Kyerematen's opinion was not stated in vocationally relevant terms. While Dr. Kyerematen's narrative statement did not define "moderate limitations" to sitting, standing, and walking, in the medical source statement Dr. Kyerematen specified that that Claimant could, at one time without interruption, sit for thirty minutes, stand for 15 minutes, and walk for three minutes; could sit for three hours, stand for two hours, and walk for one hour total in an eight hour workday; and could not walk a block at a reasonable pace on rough or uneven surfaces. (R. 2519, 2523). The ALJ's error was harmful because the limitations in Dr. Kyerematen's opinion are more restrictive that those in the RFC. Jobs are sedentary if walking

9

and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 416.967(a); S.S.R. 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. "Sitting" generally totals about 6 hours of an 8-hour workday. S.S.R. 96-9p, 1996 WL 374185, at *3. Thus, if Claimant is limited to three hours of sitting, he cannot perform sedentary work.

The ALJ also noted that Claimant had 5/5 strength, good manual dexterity, and his gait was normal. (R. 33). This does not contradict Dr. Kyerematen's opinion regarding Claimant's limitations that appeared largely based on Claimant's cardiac impairment that limited his stamina and caused symptoms such as persistent shortness of breath or dyspnea on exertion. (R. 2514–17).

Finally, the ALJ discussed a treatment note from May 16, 2018 with Duke Cardiology. (R. 33, 1724–31). The ALJ noted that Claimant had an abnormal nuclear stress test on April 4, 2018, which specifically showed abnormal regadenoson stress and rest myocardial perfusion images; large, fixed inferior and inferoapical defect of moderate to severe intensity, likely diaphragmatic attenuation artifact, but cannot exclude inferior infarction; ischemia not detected; dilated left ventricle with global LV hypokinesis and ejection fraction of 30%; and a normal ECG response to regadenoson. (R. 34, 1724–25). The ALJ also noted that Claimant's April 18, 2018 heart catheterization revealed mildly elevated filling pressures, mild pulmonary hypertension, and elevated CO/CI, and that the findings were consistent with overall well compensated non-ischemic cardiomyopathy. (R. 1726). It is unclear how this treatment note undermines Dr. Kyerematen's opinion regarding Claimant's limitations; rather, it appears consistent with Dr. Kyerematen's discussion of Claimant's existing heart problems and resulting symptoms.

The ALJ erred in weighing Dr. Kyerematen's opinion, and the evidence cited does not support his decision to assign it little weight. *See Robinson v. Saul*, No. 5:20-CV-169-FL, 2021

10

WL 4346225, at *4 (E.D.N.C. Sept. 3, 2021) (remanding for further consideration of the consultative examiner's medical opinion where the ALJ's reasons for discounting the opinion were not supported by the record), *report and recommendation adopted sub nom. Robinson v. Kijakazi*, 2021 WL 4343405 (E.D.N.C. Sept. 23, 2021). Accordingly, this matter must be remanded for the ALJ to reconsider Dr. Kyerematen's opinion regarding Claimant's limitations.

Because reconsideration of the opinion evidence may impact the remaining issues raised by Claimant related to the RFC determination, particularly in light of the additional evidence the ALJ will consider on remand (discussed below), the ALJ should reconsider the issues of Claimant's time off task, absences, and effects of lower extremity edema on remand, as necessary, in light of the ALJ's further consideration of the opinion evidence and other new evidence. *See Jones v. Astrue*, No. 5:11-CV-206-FL, 2012 WL 3580482, at *8 (E.D.N.C. Apr. 19, 2012) ("Because this court finds that remand on the issue of the treating physician's opinion will affect the remaining issues raised by Claimant, it does not address those arguments."), *adopted by*, 2012 WL 3580054 (Aug. 17, 2012).

### B. Records Submitted to the Appeals Council

Claimant was unrepresented at both his first and second hearing before the ALJ. (R. 1165–98). Claimant advised the ALJ that his medical record was not complete and listed his treatment providers so that the ALJ could obtain the missing records. (R. 1169–74). After the ALJ denied the claim, Claimant obtained an attorney who supplemented the record with hundreds of pages of missing medical evidence, from both during and after the relevant time period, from medical sources about which Claimant had informed the ALJ. (R. 43–1163). The Appeals Council determined that some of the evidence "does not show a reasonable probability that it would change the outcome of the decision" and did not exhibit that evidence. (R. 2). The Appeals Council found

11

that other evidence did not relate to the period at issue and, thus, did not affect the decision about whether Claimant was disabled beginning on or before April 26, 2019, the date of the ALJ's decision. *Id.*

Claimant argues that the Appeals Council erred in failing to consider the treatment notes and opinion evidence submitted to it for the first time. Pl.'s Mem. [DE-36] at 17–19. Defendant argues that the evidence submitted to the Appeals Council was properly considered and provides no grounds for remand. Def.'s Mem. [DE-42] at 15–16.

When deciding whether to review a case, the Appeals Council "is required to consider new and material evidence relating to the period on or before the date of the ALJ decision."[4] *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 95 (4th Cir. 1991). "Evidence is new if it is not duplicative or cumulative, and it is material if there is a 'reasonable possibility that the new evidence would have changed the outcome of the case.'" *Stanley v. Berryhill*, No. 7:17-CV-207-FL, 2018 WL 6730552, at *7 (E.D.N.C. Nov. 13, 2018) (quoting *Wilkins*, 953 F.2d at 96), *adopted by* 2018 WL 6729787 (E.D.N.C. Dec. 21, 2018). New and material evidence "need not have existed during [the relevant] period, but rather must be considered if it has any bearing upon whether the claimant was disabled during the relevant period of time." *Outlaw v. Colvin*, No. 5:11-CV-647-FL, 2013 WL 1309372, at * 2 (E.D.N.C. Mar. 28, 2013) (citing *Wooldridge v. Bowen*, 816 F.2d 157, 160 (4th Cir. 1987)). "Evidence may relate back to the period on or before the ALJ's decision even if it postdates the decision." *Shuman v. Berryhill*, No. 3:16-CV-62, 2017 WL

---

[4] This claim was filed prior to revisions made to 20 C.F.R. § 416.1470, which increased the burden on a claimant to show a "reasonable probability of a different outcome," in addition to demonstrating the evidence is new, material, and related to the period on or before the date of the hearing decision. *See Pratt v. Kijakazi*, No. 1:20-CV-679, 2021 WL 4975405, at *9 (M.D.N.C. Oct. 6, 2021), *report and recommendation adopted,* 2021 WL 4973633 (M.D.N.C. Oct. 26, 2021) (citing *Meyer v. Astrue,* 662 F.3d 700, 705 (4th Cir. 2011); *Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process*, 81 Fed. Reg. 90987-01, 90987, 2016 WL 7242991 (Dec. 16, 2016)).

3476972, at *3 (N.D.W. Va. Aug. 14, 2017) (citation omitted). The court conducts a *de novo* review of whether the additional evidence was new and material. *See Coleman v. Berryhill*, No. 6:17-CV-2613-TMC, 2019 WL 850902, at *3 (D.S.C. Feb. 22, 2019); *Kiro v. Berryhill*, No. CV 18-89 SCY, 2019 WL 1331903, at *5 (D.N.M. Mar. 25, 2019) ("Whether evidence qualifies for consideration by the Appeals Council is a question of law subject to our *de novo* review." ).

The Appeals Council divided the records into two categories, those predating the ALJ's decision and those following the ALJ's decision. (R. 2). Treatment notes that predated the ALJ's decision were from Duke University Health System, where Claimant was treated for his heart condition, dated May 16, 2018[5] through April 22, 2019 (75 pages); UNC Healthcare, where Claimant was treated for his sickle cell anemia, dated February 9, 2018 through February 15, 2019 (74 pages); Advance Community Health, Claimant's primary care provider, dated November 20, 2018 through January 24, 2019 (15 pages); Wake Med, where Claimant was seen in the emergency department for seizures and gout, dated March 12, 2018 through April 7, 2019 (659 pages); and Raleigh Neurology, where Claimant was treated for seizures, dated December 27, 2018 through March 20, 2019 (7 pages). Treatment notes that followed the ALJ's decision were from Duke University Health System, related to Claimant's heart condition, dated June 4, 2019 through July 30, 2019 (18 pages); a Questionnaire to Physician Regarding Cardiac Condition, dated November 27, 2019, from J. Mills, M.D. (1 page); a Medical Source Statement from Ellen Chrysogelos, MSN, ACNP-BC, RN, dated August 26, 2019 (5 pages); UNC Healthcare, related to Claimant's sickle cell condition, dated May 1, 2019 through November 8, 2019 (140 pages); Advance Community Health, in follow up for a seizure, dated May 20, 2019 (9 pages); Wake Med, related to an

---

[5] The Appeals Council stated these records dated from May 16, 2019, but this appears to be a typographical error as the records date from May 16, 2018. (R. 770).

13

emergency department visit after a seizure and EEG testing, dated May 19, 2019 through July 5, 2019 (100 pages); and Raleigh Neurology, related to Claimant's seizures, dated May 20, 2019 through September 10, 2019 (23 pages). The Appeals Council found the earlier records would not change the outcome of the decision and the later records did not relate to the period at issue. (R. 2).

In light of the other issue requiring remand, the court need not determine whether the Appeals Council erred in failing to consider the additional evidence submitted to it for the first time. However, the court notes that these records arguably contain some evidence that would tend to support Claimant's statements regarding his limitations and present a reasonable possibility to change the outcome of the case. Additionally, with respect to the evidence that follows the ALJ's decision, it does appear to have a bearing upon whether Claimant was disabled during the relevant period of time and, therefore, should also be considered. These records include notes of ongoing treatment for Claimant's impairments existing prior to the ALJ's decision and, importantly, medical source statements from Claimant's cardiology providers, Dr. Mills and Ms. Chrysogelos, which represent the only medical opinions from treating sources in the record, (R. 8–13). *See Futch v. Saul*, No. 5:19-CV-286-D, 2020 WL 5351603, at *7 (E.D.N.C. Aug. 17, 2020) (finding the ALJ on remand should consider a letter from the claimant's treating physician that was newly submitted to the Appeals Council but not considered), *report and recommendation adopted*, 2020 WL 5351598 (E.D.N.C. Sept. 4, 2020). On remand, the ALJ should have the benefit of Claimant's full medical records and opinion evidence in reaching a decision. The court expresses no opinion on the outcome of the claim on remand.

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-35] is

14

ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-41] is DENIED, and this case is remanded to the Commissioner, pursuant to sentence four of § 405(g), for further proceedings consistent with this order.

So ordered, this the 7th day of March 2022.

Robert B. Jones, Jr.
United States Magistrate Judge

15